UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ROSE SINGER,                        )
                                    )
           Plaintiff,               )
                                    )
v.                                  )   Case No. 21-cv-2111-JWB-TJJ
                                    )
CARMEL DURIAS LAGAS, et al.,        )
                                    )
           Defendants.              )
_____)

## MEMORANDUM AND ORDER

This case is before the Court on Defendant Werner Enterprises, Inc.'s Motion for Protective Order and Stay of Deposition (ECF No. 77). The case arises out of an accident on March 2, 2019 involving one of Defendant's tractor-trailers and a Ford F-250 pickup truck pulling a camper. Plaintiff was a passenger in the pickup truck. The accident occurred on I-70 in "hazardous winter weather road conditions," according to Plaintiff's Complaint.[1] Plaintiff filed a "Notice of Videotaped Deposition Pursuant to Fed. R. Civ. P. 30(B)(6) and Request for Production of Documents," listing 140 topics for deposition and production of documents.[2] Defendant's motion contains objections to 66 of those topics, but through briefing and continued discussions, the parties have narrowed the topics remaining in dispute.[3] For the following reasons, the Court grants in part and denies in part Defendant's motion.

---

[1] ECF No. 1 at ¶ 22.

[2] ECF No. 63.

[3] Defendant did not certify with its motion that the parties conferred in good faith as required by Fed. R. Civ. P. 26(c) and D. Kan. Rule 37.2. Nevertheless, through the discussions presented in the briefing, the Court is satisfied that the parties have discussed these issues at length and made adequate and reasonable good faith efforts to confer. In the future, however, the parties are reminded of the prerequisite for filing a motion regarding a discovery dispute: Rule 26(c) requires "a certification that the movant has in good faith conferred or attempted to confer with other affected

1

## I.     LEGAL STANDARD

Defendant moves for a protective order, but also claims that certain topics are not relevant. Therefore, the standards for both a protective order and relevancy are at issue here.

The decision to enter a protective order is within the court's broad discretion.[4] Pursuant to Federal Rule of Civil Procedure 26(c), a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]"[5] Despite this broad discretion, "a protective order is only warranted when the movant demonstrates that protection is necessary under a specific category set out in Rule 26(c)."[6] In addition, the party seeking a protective order bears the burden of establishing good cause.[7] The moving party must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."[8] Even upon a showing of good cause, however, the Court also considers other factors that were or could have been presented by the party seeking discovery to determine whether the totality of the circumstances justifies the entry of a protective order.[9] The court has

---

parties in an effort to resolve the dispute without court action." Rule 37.2 further requires the 26(c) certification to "describe with particularity the steps taken by all counsel to resolve the issues in dispute." The Court trusts that the parties will not overlook this requirement again, and only excuses the oversight this time because it can ascertain by the briefing that the parties did, indeed, confer in good faith.

[4] *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 482 (10th Cir. 1995); *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

[5] Fed. R. Civ. P. 26(c)(1).

[6] *Herrera v. Easygates, LLC*, No. 11-CV-2558-EFM-GLR, 2012 WL 5289663, at *2 (D. Kan. Oct. 23, 2012) (citing *Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 534 (D. Kan. 2003)).

[7] *Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 244 (D. Kan. 2010).

[8] *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981).

[9] *See Citimortgage, Inc. v. Sanders*, No. 11-CV-2540-EFM-GLR, 2012 WL 6024641, at *2 (D. Kan. Dec. 4, 2012). The Court makes specific reference to its consideration of the totality of the circumstances because all three briefs are short on legal authority and analysis. To some degree, the Court understands that the number of topics at issue here prevented in-depth analysis of any particular topic. But a deeper discussion about how the discovery connects to Plaintiff's claims and what burden it presents to Defendant would have been helpful.

broad discretion "to decide when a protective order is appropriate and what degree of protection is required."[10] The Supreme Court has recognized "[t]he trial court is in the best position to weigh the fairly competing needs and interests of the parties affected by discovery. The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders."[11]

Relevancy is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense.[12] Information still "need not be admissible in evidence to be discoverable."[13] When the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[14] Conversely, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request.[15] Relevancy determinations are generally made on a case-by-case basis.[16] And Rule 26(b)(2)(C) provides "[o]n motion or on its own, the court must limit the frequency or extent of discovery

---

[10] *MGP Ingredients, Inc. v. Mars, Inc.*, 245 F.R.D. 497, 500 (D. Kan. 2007) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).

[11] *Seattle Times*, 467 U.S. at 36.

[12] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

[13] Fed. R. Civ. P. 26(b)(1).

[14] *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).

[15] *McBride v. Medicalodges, Inc.*, 250 F.R.D 581, 586 (D. Kan. 2008).

[16] *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate*, No. 09-cv-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011).

otherwise allowed by these rules or by local rule if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)."

Along with these principles, this Court is mindful of its duty to construe and administer the Federal Rules of Civil Procedure "to secure the just, speedy, and inexpensive determination of every action and proceeding."[17]

## II. ANALYSIS

Before beginning the analysis, there are a few preliminary matters to mention. Through the course of the briefing, both parties made concessions and narrowed focus. This means a number of issues raised in Defendant's motion no longer need resolution. The Court notes them here.

First, the Court does not address Defendant's request to stay the 30(b)(6) deposition because it is moot. The deposition has been rescheduled for April 20, 2022.

Second, the Court does not discuss a few of the deposition topics Defendant claims are still at issue, as the narrative in Defendant's reply suggests that the parties have resolved their dispute about the topics through modification of the topics. These topics are 62 and 136. In addition, Defendant states in its reply brief that Topics 19, 21, 75, 76, 80, 82, and 87 remain at issue.[18] But these are topics about which Plaintiff agrees to Defendant's suggested scope.[19] And despite listing these topics as "Court's intervention [] required," Defendant doesn't discuss any of them in its reply brief. Because it appears Court intervention is no longer necessary with regard to these topics, the Court doesn't address them here. To be clear, however, Defendant shall produce a witness or witnesses to address these topics to the extent it has offered in compromise to do so.

---

[17] Fed. R. Civ. P. 1.

[18] ECF No. 84 at 2.

[19] ECF No. 83 at 7, 9, 10.

4

Third, Defendant doesn't list Topic 140 as still pending,[20] but because there appears to be a live dispute on the topic, the Court includes it in the discussion below.

Finally, the Court notes Plaintiff has apparently served four requests for production on Defendant, in addition to the requests made within the deposition notice that is the subject of this motion.[21] According to Defendant, the prior requests for production totaled 162.[22] Many of the requests addressed below are overbroad—especially considering the fact that Plaintiff already served the numerous prior requests.

The Court next turns to a brief discussion of the topics with remaining disputes.

### A. Topics Objected to as Overburdensome and Irrelevant

**Topic 3: Knowledge of the employee handbook for defendant Lagas that was in effect at the time of the subject crash**

Defendant represents that in attempting to reach a compromise, it offered to produce a witness to discuss the sections of the applicable employee handbook relating to (1) training, (2) driving in winter weather conditions; (3) accident kits; (4) what to do if in an accident; and (5) stopping at the scene. But in addition to these sections, Plaintiff still seeks testimony on (6) equipment and (7) accident evaluations. Defendant argues these two subtopics are overbroad and disproportionate to the needs of the case.

The Court agrees with Defendant on one point but not the other. Plaintiff has not challenged the maintenance or condition of equipment in her claims—making this topic irrelevant and overbroad. But Defendant's policies on accident evaluation may bear on issues relating to the

---

[20] ECF No. 84 at 2.

[21] *See* ECF No. 75.

[22] ECF No. 77 at 3.

accident here, and Defendant has not shown how it would be an undue burden to provide a representative to discuss this section of the handbook. Defendant's objection is overruled in part and sustained in part. Defendant shall produce a witness to testify regarding items (1)–(5) and (7) referenced above.

> **Topic 9: Knowledge of the accident register maintained as required in 49 CFR 390.15(b) to include the motor vehicle incident with Plaintiff and all accidents three years prior to the date of the incident**

After Defendant filed its motion, Plaintiff agreed to limit this topic to those accidents which occurred on an interstate in <u>snow and ice</u> between March 2, 2016 and March 2, 2019. Defendant argues even this limitation is too broad; Defendant states it "would have to look beyond the accident register to the underlying records for every accident in a three-year period to determine which accidents involved winter weather, such that it is overbroad and disproportionate to the needs of this case."[23] Defendant represents that in attempting to reach a compromise, however, it offered to produce a witness to discuss the accident register applicable to the accident that is the subject of this litigation.

The Court finds Plaintiff's request overbroad, even with the newly-suggested snow and ice limitation. It would cause Defendant undue burden to review the details of all accidents for three years to determine which ones involved snow and ice on an interstate. Production of a witness who can discuss the relevant accident register is all that is required. The Court strikes the remainder of this topic.

> **Topic 15: Knowledge of any and all documents setting forth any policies, procedures, guidelines, recommendations or directives regarding driver conduct, driver safety, driver hiring, subcontractor hiring, commercial carrier hiring, discipline or**

---

[23] ECF No. 84 at 3.

> **firing prepared or used by Werner during the five year period prior to the subject incident and through the present date, together with all amendments, revisions or supplements thereto**

In attempting to reach a compromise, Defendant has offered to produce a witness to discuss this topic as it relates to driving in winter weather conditions. And Plaintiff now states she will limit the topic to Defendant's policy regarding "just in time" loads, and for only the five years before the accident (not to-date). Defendant still argues the topic is overbroad, irrelevant, and disproportionate.

The Court agrees with Defendant. Five years prior to the accident is not proportional to the needs of the case and would impose an undue burden on Defendant. The Court therefore limits the topic to Defendant's policy as to "just in time" loads in winter weather conditions. Three years prior to the crash appears to the Court to be a more reasonable temporal scope, so the Court modifies the length of time Defendant must look back, as well. Defendant's objection is sustained in part and overruled in part, with Topic 15 limited as noted in this paragraph.

> **Topic 16: Knowledge of all training or instructional videotapes, CDs or DVDs used by any Werner employee in its training any of its drivers at any time during the five years before the occurrence**

Again, Defendant offered in compromise to produce a witness to discuss this topic as it relates to training to drive in winter weather conditions. Plaintiff has agreed to limit the topic to winter weather driving training and/or instructional videos, but wants another set of videos used by Defendant <u>before</u> the set of videos Defendant has produced. (Defendant produced the videos that Defendant Lagas watched.) Plaintiff argues the earlier videos are relevant to show whether Defendant changed its policies and instructions, and, if so, why.

This topic presents a close question for the Court. Although it is a bit of a stretch, Plaintiff has shown how the prior videos may be relevant to her claims. Defendant has not explained why

7

testimony on the earlier videos would present an undue burden or why a protective order is necessary. The Court overrules Defendant's objections to this topic as further limited by Plaintiff (and noted in the preceding paragraph).

> **Topic 17: Knowledge of all pay stubs, federal W-2 forms, expense reimbursement, commissions, bonuses and any other documents or tangible evidence reflecting payment of money or benefits for any reason from Werner to defendant Lagas for the year period preceding the subject crash**

Plaintiff agrees to limit this topic to the eight days before the accident—but then also says she really is trying to figure out when Lagas was a student, so she shouldn't need more than five or six months of information. (Lagas testified in deposition that his status as a student was reflected in his compensation.) Defendant maintains that six months of the documents requested in Topic 17 from 2018-19 is overbroad, irrelevant, and disproportionate, and represents that Plaintiff has other documents (such as Lagas's driver file) that will confirm when Lagas was in training. Defendant argues that locating six months of paystubs from 2018-19 forward would be cumbersome, and the information Plaintiff seeks is available in a less cumbersome manner.

The Court finds that Plaintiff's modified topic is relevant on its face, and Defendant hasn't shown why it would be an undue burden to produce roughly six months of the identified documents, which would allow Plaintiff to verify when Lagas was in training. The Court overrules Defendant's objection to this topic as modified by Plaintiff (limited to six months of the identified documents from 2018–19).

> **Topic 20: Knowledge of all documents constituting, commemorating, or relating to any written instructions, orders, or advice given to defendant Lagas in reference to cargo transported, routes to travel, locations to purchase fuel, cargo pickup or delivery times issued by Werner from two weeks prior to and including date of loss**

Defendant argues that the two-week scope of this topic is overbroad, irrelevant, and disproportional. Plaintiff responds that Defendant produced two weeks of Qualcomm messages—many of which refer to the weather and the impact of the weather on drives. Plaintiff seeks a witness who will speak to the messages. Defendant responds that the documents containing the messages, by themselves, are enough. The Court finds the requested information relevant, and Defendant has not shown it would be an undue burden. Defendant's objections to this topic are overruled.

> **Topic 63: Knowledge of any compensation from shippers to Werner, including any bonuses and/or other incentives, for items contained in the load carried by defendant Lagas at the time of the subject crash**

Defendant argues that the agreement between Defendant and its client is irrelevant and contains confidential and proprietary business information. Plaintiff, on the other hand, responds that she is trying to learn whether Defendant had incentive (i.e., benefits or penalties) to deliver the "just in time" load on time. The Court finds the information relevant to whether Defendant had an incentive to keep drivers on the road in what might be considered unsafe conditions. Defendant has not shown it needs protection from this topic based on undue burden or any other category set out in Rule 26(c). The Court therefore overrules Defendant's objections to this topic.

> **Topic 109: All investigations of crashes or field events involving motor vehicle collisions or other adverse outcomes (i.e., tractor-trailer jackknifes without collision, and any other type of one-vehicle adverse outcome) involving hazardous winter weather, including but not limited to snow and ice**

Since the time of submitting this topic, Plaintiff has agreed to limit the scope to six years prior to the accident and to motor vehicle collisions only. Even as limited, Defendant argues, the topic remains facially irrelevant, overbroad, and disproportionate. Defendant claims that responding to the topic would require it to review archived files dating back nearly ten years,

9

determine the weather, and whether another vehicle was involved—regardless of who was at fault. And "investigations" would potentially require thousands of pages of documents, countless hours reviewing them, and privilege and work product doctrine. Defendant has demonstrated that responding to this topic presents an undue burden—at least as to the current temporal scope of the topic. The Court modifies Topic 109 to "All investigations of crashes involving motor vehicle collisions during hazardous winter weather during the three years prior to the accident at issue in this case."

> **Topic 134: How many tractors and trailers does Werner own**
> **Topic 135: How many tractors and trailers does Werner have on the road at any given time**

Upon objection by Defendant, Plaintiff modified her request to the number of tractors and trailers owned by Defendant on the day of the accident and "today" (for comparison purposes). Defendant contends that this inquiry is irrelevant to Plaintiff's claims, and whether Defendant has increased or decreased its fleet does not make the claims or defenses in the case more or less likely. The Court agrees with Defendant. The topics are not relevant to the claims and defenses in the case, and the Court strikes them.

> **Topic 140: Knowledge of dash cameras in Werner trucks from January 2014 to the present**

Plaintiff contends this topic is relevant because she understands that all of Defendant's trucks are now equipped with dash cameras, and she is entitled to know when and why they were installed. Defendant maintains that dash cameras are entirely irrelevant because (1) Lagas's vehicle was not equipped with one; and (2) in any event, Lagas was rear-ended. The Court finds this topic irrelevant to the circumstances of the accident at-hand and strikes it.

### B. Topics Regarding Maintenance and Repair Records[24]

**Topic 69:** Knowledge of all maintenance files and records from at least one year prior to accident maintained by Werner in accordance 49 CFR 396 on the truck tractor and trailer involved in the accident inclusive of any inspections, repairs or maintenance done to the subject tractor and trailer

**Topic 70:** Knowledge of all driver daily vehicle inspection reports (DVIRs) submitted by any driver(s) on the truck tractor and trailer from at least 30 days prior to the accident in the possession of Werner. This specifically includes all the driver daily vehicle inspection reports (DVIRs), maintenance files and records maintained by any other person(s) or organization(s) that are in the possession of Werner

**Topic 71:** Knowledge of all inspection reports for the vehicle which were conducted by state or municipal law enforcement agencies, as required by 49 CFR 390.30, or any state or municipal statutes or ordinances from for a period of five years leading up to the incident

**Topic 72:** Knowledge of all inspection reports for the vehicle which were conducted by state or municipal law enforcement agencies, as required by 49 CFR 390.30, or any state or municipal statutes or ordinances from for a period of five years leading up to the incident

**Topic 73:** Knowledge of any and all DOT and State inspections of the tractor involved in the crash for the five years leading up to the date of this crash

Defendant makes the same objection to all of the above topics: They are irrelevant because Plaintiff does not allege that the tractor or trailer was defective. Plaintiff, of course, raises her previously-pending motion to amend to add claims relating to the underride guard. The Court has since denied Plaintiff's motion to amend. Because the condition of Plaintiff's equipment is not at issue, these topics are not relevant and the Court strikes them.

### C. Topics Relating to the Trailer's Underride Guard

---

[24] Defendant includes Topics 14 and 68 in its list of topics under this subheading. But these topics are not listed as remaining in dispute. The Court therefore has not included them in the following list.

**Topic 113:** All crashes or field events involving a 2012 Wabash National Dry Van Duraplate trailer wherein the other vehicle involved sustained a rear underride of the trailer

**Topic 114:** Why Werner utilized a 2012 Wabash National Dry Van Duraplate rear underride guard system for the subject trailer

**Topic 115:** Why the subject trailer does not have underride guard vertical supports at or near the edge of the subject trailer

**Topic 116:** How far the rear underride bar vertical supports were located from the edge of the trailer

**Topic 117:** All changes to the design of the trailer rear underride guard system for any trailer used by Werner that is newer than the subject trailer

**Topic 118:** Knowledge related to the IIHS testing of trailer rear underride guard systems in 2011, 2013 and 2017

**Topic 119:** All trailer rear underride guard system testing for any trailer rear underride guard system between 2010 and 2019

**Topic 120:** Whether Werner knew of IIHS's "catastrophic" testing results of the 2012 Wabash National Dry Van Duraplate rear underride guard system at 30 percent overlap

**Topic 121:** If Werner knew of IIHS's "catastrophic" testing results of the 2012 Wabash National Dry Van Duraplate rear underride guard system at 30 percent overlap, why did Werner continue to run trailers with these systems on the road

**Topic 122:** If Werner did not know of the "catastrophic" testing results of the 2012 Wabash National Dry Van Duraplate rear underride guard system at 30 percent overlap, why didn't it know of these results

**Topic 123:** Whether Werner was aware of the "Tough Guard" award for trailers that pass all three IIHS tests, meaning there was no underride in any of the crash testing, which was begun in 2017

**Topic 124:** Whether Werner ever gave any consideration regarding updating its trailers and/or trailers' rear underride guard systems

**Topic 125:** What the cost would be to Werner to update its trailers and/or trailers' rear underride guard system to pass the IIHS 30 percent overlap testing

**Topic 126:** Knowledge related to other similar incidents in which Werner trailers have been involved in motor vehicle

> crashes where the other vehicle sustained a rear underride of Werner's trailer between January 2010 and March 2019
>
> **Topic 127:** Knowledge related to other similar incidents of other cases in which Werner trucks, truck drivers and trailers have been involved in motor vehicle crashes in winter weather conditions involving snow and ice between January 2010 and March 2019
>
> **Topic 128:** All material specification for the rear underride bar on the subject trailer
>
> **Topic 129:** All testing and inspections of the rear underride bar on the subject trailer
>
> **Topic 130:** The Safety Design Guidelines applicable to the subject trailer's rear underride guard system
>
> **Topic 131:** All testing relied upon to certify FMVSS No. 223 and FMVSS No. 224 compliance for the subject trailer
>
> **Topic 132:** All documents in your possession which support compliance with FMVSS No. 223 and FMVSS No. 224

All these topics relate to the subject matter of Plaintiff's proposed amended complaint. The Court recently denied Plaintiff leave to amend. Plaintiff argues that regardless of the outcome of her motion to amend, these topics remain relevant. The Court disagrees. Not only are the topics irrelevant to Plaintiff's claims presented in the case, but also they are overly broad, unduly burdensome, and disproportionate to the needs of the case. Many have no temporal limitations and ask for information that is within the knowledge of the manufacturer of the trailer and underride bar—not Defendant. The Court finds that these topics are beyond the permissible scope of discovery and strikes them.

**IT IS THEREFORE ORDERED** that Defendant Werner Enterprises, Inc.'s Motion for Protective Order and Stay of Deposition (ECF No. 77) is granted in part and denied in part.

Dated in Kansas City, Kansas on this 8th day of April, 2022.

*/s/ Teresa J. James*
Teresa J. James
U.S. Magistrate Judge